IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:24-CR-0068-D

UNITED STATES OF AMERICA,

v.

PARKER ALLEN GIBSON

**MOTION TO SUPPRESS AND
INCORPORATED MEMORANDUM OF LAW**

Defendant Parker Allen Gibson, through counsel, moves the Court pursuant to the Fourth Amendment of the United States Constitution for an order suppressing any and all evidence seized pursuant to the warrantless search of a storage unit and garage, and any derivative statements and evidence. Although Mr. Gibson's estranged wife purported to give Army CID consent to search the storage unit and sealed contents, she lacked any legal authority to do so.[1] Suppression is required.

## I. INTRODUCTION

Parker Gibson is a retired special forces soldier. He served this country with remarkable distinction for 21 years, earning a Purple Heart and two Bronze Stars. In June 2022, Gibson and his now ex-wife, USMS CW4 Kelsey Gibson,[2] were beginning the divorce process. After receiving a report from Kelsey on June 22, 2022, Army CID unlawfully searched Mr. Gibson's storage unit and its contents without a warrant. Army CID then went to the Gibson home, where Army CID unlawfully searched sealed boxes and containers in the Gibson garage. Kelsey purported to provide consent.

---

[1] Transcript of Probable Cause and Detention Hearing: *United States v. Parker Allen Gibson*, 5:22-MJ-1651-JG-1 (Aug. 1, 2022, Numbers, J.). [D.E. 18 in 5:22-MJ-1651-JG.] The Court dismissed the Criminal Complaint following this Preliminary Hearing because the United States lacked probable cause supporting its allegation that Mr. Gibson possessed the items that are now the subject of this Indictment. [Id.] Hereinafter this dismissed Criminal Complaint action will be referred to as "*Gibson I.*" A copy of this Transcript is attached for the Court's convenience as Exhibit A.

[2] Kelsey Gibson is an active duty Chief Warrant Officer 4 in the Joint Special Operations Command (JSOC) intelligence community. Garcia testified she has "extensive military history [as does Mr. Gibson]", deploying and supporting JSOC,"... "as well as [Mr. Gibson's former] unit." Tr. of Hrg. [D.E. 18 in 5:22-MJ-1651-JG.]

However, she did not have "common authority" over these premises or effects; she could not provide valid consent.

CID Agent Justin Garcia previously testified Kelsey told CID that she rented the unit for Mr. Gibson's exclusive use in March 2021. She immediately provided the only two keys to Mr. Gibson, deployed for 90 to 120 days to Jordan. She did not return to the storage unit until May 2022. [Tr. of Hearing, Gibson I: D.E. 18 in 5:22-MJ-1651-JG, p.26] In the dismissed Criminal Complaint in 5:22-MJ-1651, *Gibson I,* the government's submitted a sworn affidavit stating:

> 4. A Confidential Source ("CS") reported in early May 2022 that the CS located military equipment in a storage unit. The storage unit was in CS's name but exclusively used by GIBSON.

[Criminal Complaint, Gibson I: D.E. 1 in 5:22-MJ-1651-JG.] No reasonable officer could conclude Kelsey had common authority over a storage unit "exclusively used" by Mr. Gibson.

Moreover, Kelsey told Agent Garcia that Mr. Gibson did not want her in the storage unit. [Tr. of Hearing, Gibson I: D.E. 18 in 5:22-MJ-1651-JG, p.26]. Kelsey told them Mr. Gibson ensured she could not go in; he locked her out. Kelsey told CID that she when she went to the storage unit in May 2022, she found that Mr. Gibson had put a new lock on it. [Id. p. 13, ln. 8-13.] That is, she told CID she cut off Mr. Gibson's lock with bolt cutters, and replaced his lock with a new lock.. [Id.] She told them the storage unit was not a place she believed she was allowed to go. [Id., ln. 4-6.] She told them she did not believe she had any custody or control over the items therein. [Id., ln. 7-9.] She told them her marriage was "deteriorating." [Id. pg. 39, at ln. 15-18.] A reasonable officer would know this woman could not provide valid consent.

Finally, even if Kelsey could consent to a search of the unit (which she could not), Kelsey could not provide consent to search the sealed contents of the unit. As set forth more fully below, the government's

2

evidence shows that every piece of evidence in unit 204 was in a locker, sealed container, or lock box.[3] The same is true for the items seized from the Gibson's garage. As with the storage unit, the government's evidence shows that every piece of evidence seized from the garage was in a sealed container or lockbox, i.e. "in a case tucked under some shelving." Kelsey lacked common authority to consent to the search of these sealed containers. For each of these reasons, all evidence in this case must be suppressed.

## II. ARGUMENT

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." U.S. Constitution, Amend. IV. It is axiomatic that a warrantless search is "'per se unreasonable' unless it falls within one of the 'specifically established and well-delineated exceptions' to the warrant requirement." *United States v. Simons*, 206 F. 3d 292, 399-400 (4th Cir. 2000)(internal citations omitted). One such exception is valid consent, which can only be given by "one with authority to consent." *Id*. 402-03.

For a third party to provide consent to a search, that person must have "**common authority** over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974)(emphasis added). Common authority "is not merely a question of property interest. Rather, it requires evidence of 'mutual use' by one generally having 'joint access or control for most purposes.'" *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007)(quoting *Matlock*, 415 U.S. at 171 n. 7). Under this analysis, common authority means that it is "reasonable" for a user of the premises "to recognize that any of the co-[users] has the right to permit the inspection in his

---

[3] The agent testified that the military drones were contained inside "two military size wall lockers." [Id. p. 12, ln. 19-21.] The ammunition was contained inside "different Pelican cases" that had to be opened. [Id. at p. 12-13.]

own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock*, 415 U.S. 171 n. 7. Even where a third party may not have common authority over the premises, consent may still be valid for Fourth Amendment purposes if the agent "act[ed] under a reasonable belief that the [person who consented to their entry] … granted valid consent to the search." *United States v. Kinney*, 953 F.2d 863, 866 (4th Cir. 1992)(internal citations omitted).

The warrantless search here is per se unreasonable, because Kelsey Gibson clearly lacked common authority to consent to any search of unit 204 or its contents.[4] Yes, Kelsey Gibson's name is on the storage unit contract. However, it is undisputed that she did not have "mutual use" or "generally have joint access or control for most purposes." *Buckner*, 473 F.3d 551, 554. The government has already conceded there was no "mutual use." It filed a sworn affidavit with the dismissed Criminal Complaint in 5:22-MJ-1651, admitting that although the "unit was in [Kelsey Gibson's] name, **it was exclusively used by [Parker] Gibson.**" [See Criminal Complaint, Gibson I: D.E. 1 in 5:22-MJ-1651-JG.] Indeed, Agent Garcia testified Kelsey stated she rented the unit for Mr. Gibson's exclusive use in March 2021, immediately provided the only two keys to Mr. Gibson, and deployed for 90 to 120 days to Jordan. She did not access the storage unit for over 14 months after she rented it. According to Kelsey she went to the storage unit for the first time in May 2022, now that her marriage was "deteriorating." [Tr. of Hearing, Gibson I: D.E. 18 in 5:22-MJ-1651-JG, p.26]. In fact, Kelsey did not tell agents that she had *ever* accessed or entered Unit 204 before she cut Mr. Gibson's lock off in May 2022.

It is therefore clear that Kelsey Gibson did not have "joint access or control" over unit 204 for any purposes. [Tr. of Hearing, Gibson I: D.E. 18 in 5:22-MJ-1651-JG, p.26] In fact, Kelsey told agents that Mr. Gibson took steps to make sure she could not access or control the unit for any purposes. In

---

[4] For a thoughtful and well-reasoned order related to third party consent to search a storage unit and compiling cases, the defendant directs the Court to the district court opinion from the US District Court for the Eastern District of Virginia in *United States v. Manafort*, 323 F.Supp.3d 768 (E.D.VA., July 9, 2018).

order to gain access, Kelsey said she had to use bolt cutters to cut Mr. Gibson's lock off. [Id. p. 13, ln. 8-13.] No reasonable officer would conclude that Kelsey, who had to literally break into Unit 204 by cutting the lock, generally had joint access or control to the unit or its contents. To the direct contrary, Mr. Gibson, like the defendant in *Buckner*, "affirmatively intended to exclude" his wife from Unit 204. *See Buckner*, 473 F.d3d at 554 (holding that it cannot be said that one who takes steps to affirmatively exclude others from personal items assumed the risk that a third party would permit others to search).

Moreover, Kelsey specifically told agents she did not believe that she had joint access or control to Unit 204. Agent Gargia has testified that Kelsey told them "the storage unit was not a place she believed she was allowed to go." [Tr. of Hearing, Gibson I: D.E. 18 in 5:22-MJ-1651-JG, p.13, ln. 4-6.] She told them "she did not believe she had any custody or control over the items therein." [Id., ln. 7-9.] She told them her marriage was "deteriorating," at the time of the search. [Id.] Kelsey lacked any actual authority to consent to the search of Unit 204 or its contents.

It is anticipated that the government will respond that they need not establish that Kelsey had actual authority, if "the facts available to the officer" at the time of the search would "warrant a [person] of reasonable caution in the belief" that the consenting party had authority." *See Buckner*, 473 F.d3d at 554. This argument fails. Agent Garcia has already testified that Kelsey told him that 1) Mr. Gibson had exclusive control over Unit 204, 2) the storage unit was not a place she was allowed to go, 3) in fact he had locked her out and she had to break in, and 3) she did not believe she had custody or control over any of the items therein. No person of reasonable caution, with basic training in the law of consent to conduct a warrantless search, would conclude Kelsey had authority to consent to the search of Unit 204.

Finally, even if Kelsey could consent to a search of the unit (which she could not) and the garage, Kelsey could not provide consent to search their sealed contents. This is because the authority to consent to search of a general area does not "automatically extend to the interiors of every discrete enclosed space

capable of search within the area." *United States v. Block*, 590 F.2d 535, 541 (4th Cir. 1978)(a mother's ability to consent to her son's room in her home did not extend to a search of a closed "footlocker" in the room.) The Fourth Circuit has long protected these "enclosed spaces", explaining:

> This is as it must be for the protection of one of the primary objects of people's ordinary expectations of privacy. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Common experience of life, clearly a factor in assessing the existence and the reasonableness of privacy expectations, surely teaches all of us that the law's "enclosed spaces" mankind's valises, suitcases, footlockers, strong boxes, etc. are frequently the objects of his highest privacy expectations, and that the expectations may well be at their most intense when such effects are deposited temporarily or kept semi-permanently in public places or in places under the general control of another. Indeed, to the sojourner in our midst all of us at one time or another the suitcase or trunk may well constitute practically the sole repository of such expectations of privacy as are had.

*Id*.

Here, each one of the items seized were contained in a valise, suitcase, footlocker, strong box, etc. within the storage unit or the garage. *See id*. As to Unit 204, Agent Garcia testified that the military drones were contained inside "two military size wall lockers." [Tr. of Hearing, Gibson I: D.E. 18 in 5:22-MJ-1651-JG, pg. 12, ln. 19-21.] The ammunition was contained inside "different Pelican cases" that had to be opened. [Id. at p. 12-13.] The government's evidence, produced in discovery, makes clear that the items seized from Unit 204 were located within strong boxes, sealed boxes, and other sturdy latched cases. A representative sample of the photographs of the various containers opened and searched by law enforcement, are attached hereto as Exhibit B. They were all sealed. [Ex. B.] The government unlawfully opened and searched each one without a warrant. The evidence must be suppressed. *Block*, 590 F.2d at 541.

Likewise, the ammunition seized from the Gibson's garage was in a sealed container or lockbox, i.e. "in a case tucked under some shelving." [Criminal Complaint, Gibson I: D.E. 1 in 5:22-MJ-1651-JG.] A photograph of the case tucked under the shelving, produced by the USAO

6

in discovery, is attached hereto as Exhibit C.[5] Assuming without conceding that Kelsey Gibson had actual authority to consent to search the home's garage, she did not have authority to consent to a search of the contents of a latched case that had been tucked away from view under some shelving. It is implicit in Kelsey's description to agents that she "searched" the garage and discovered this hidden box that Mr. Gibson concealed it from her. The government unlawfully opened and searched the box without a warrant. The evidence must be suppressed. *Block*, 590 F.2d at 541.

### III. CONCLUSION

WHEREFORE, Mr. Gibson respectfully requests that the Court schedule an evidentiary hearing, that this motion to suppress be granted, and that this Court enter an Order that all evidence seized and derived from the illegal warrantless search of Unit 204 and the contents of the garage be excluded from evidence in this case.

Respectfully submitted this 17th day of August 2024.

                                    **THE SALMON LAW FIRM, LLP.**

                                    *Elisa Cyre Salmon*

                                    Elisa Cyre Salmon
                                    N.C. State Bar No. 35242
                                    Post Office Box 185
                                    Lillington, North Carolina 27546
                                    Telephone: (910) 984-1012
                                    *Private Counsel for Defendant*

---

[5] The defendant assumes this photograph reflects the box which the government has represented contained the ammunition seized from the Gibson garage. The record is admittedly less well-developed as to the ammunition taken from the garage.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed via the Court's CM/ECF system, which will send electronic notice to the following:

Mr. Gabe Diaz
Assistant United States Attorney
Eastern District of North Carolina

This is the 17th day of August 2024.

                                           **THE SALMON LAW FIRM, LLP.**

                                           */s/ Elisa Cyre Salmon*

                                           Elisa Cyre Salmon
                                           N.C. State Bar No. 35242