UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CR-68-D-RN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | GOVERNMENT'S RESPONSE IN |
| v. | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTION TO SUPPRESS |
| PARKER ALLEN GIBSON | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to Defendant's motion to suppress (D.E. 27). Defendant argues all evidence seized from the storage unit and garage should be suppressed because the consent to search given by Kelsey Gibson was invalid. Defendant is wrong. Kelsey Gibson had authority to consent to the search and law enforcement did not exceed the scope of the search. For the reasons set forth below, the Court should deny the motion.

<u>RELEVANT FACTUAL SUMMARY</u>

Towards the end of his 21-year enlistment, Defendant decided his future military pension was insufficient to compensate him and he stole any military items he could get his hands on including drones, grenades, classified documents, and numerous unit memorabilia.[1]

---

[1] The amount of unit memorabilia (swag) was not of a personal amount, but numerous, and included different sized Yeti brand cups, military challenge coins, handmade wooden flags, decanters, and other items, all which were sold only at the unit swag shop, operated by the unit First Sergeant, who Defendant worked for his last few months at the unit.

On June 21, 2022, Kelsey Gibson, Defendant's wife and a Chief Warrant Officer in the Army, reported to Army Criminal Investigative Division (CID) agents that stolen military equipment was located in storage unit #204 of the USA Storage Center Stockade located at 67 Brandywood Court, Cameron, North Carolina (Harnett County). See Gov. Ex. 1, CID Report 1, Gov. Bates Stamp (GBS) 0024. Kelsey Gibson reported that the storage unit contained military drones, military green tip ammunition, military lithium batteries, numerous military Pelican[2] cases and military memorabilia. Id. Kelsey Gibson indicated that she believed the items were placed in the storage unit by her husband, the Defendant. Id.

Kelsey Gibson also informed CID that she had taken photographs of the items and uploaded the images to Google Drive. Id. Kelsey Gibson then provided access to the Google Drive account to CID and volunteered to meet CID agents at the storage unit the next day. Id. CID agents reviewed the Google Drive photos, approximately 175. Based on their military service, training and experience, and their review of the photos, to include military Puma drones, military green tip ammunition, and items with National Stock Numbers (NSN) attributable to the military, agents determined the items were in fact stolen from the military. See Gov. Ex. 2, Google Drive Photos, GBS 1048.[3]

The next day on June 22, 2021, Army CID agents, accompanied by a Harnett County Sheriff's deputy, met Kelsey Gibson at USA Storage Center. Gov. Ex. 1.

---

[2] Pelican cases are waterproof, airtight, and corrosion proof cases utilized by the military and law enforcement to store and carry sensitive items.
[3] GBS 1048 contains 175 pictures; however, Gov. Ex. 2 only contains a sampling of 8 photographs.

2

Kelsey Gibson provided CID agents her rental agreement for the storage unit. See Gov. Ex. 3, Rental Agreement, GBS 0025-27; Def. Ex. A at 33.  The only tenant listed for unit 204 was Kelsey Gibson. Id.  Kelsey Gibson provided verbal and written consent for CID agents to search the storage unit. See Gov. Ex. 4, Written Consent to Search, GBS 0028.

Prior to entering the premises of USA Storage Center, CID agents utilized the gate access code provided by Kelsey Gibson. Gov. Ex. 1; Def. Ex. A at 30.  Kelsey Gibson then escorted CID agents to Unit 204. Gov. Ex. 1.  There was an operable lock on the unit and Kelsey Gibson unlocked it using a key. Def. Ex. A at 31.

With Kelsey Gibson's consent, CID agents then searched the storage unit and found, among other things, multiple military drones, two maps marked classified as SECRET, two incendiary grenades, one smoke grenade, various claymore mine components, numerous items of unit memorabilia, and approximately 5,934 rounds of ammunition consisting of various calibers, some of which are confirmed to be U.S. Army Special Operations Command specific. See Gov. Ex. 5, Evidence Custody Document, GBS 0033-39.

<u>PROCEDURAL HISTORY</u>

On July 8, 2022, U.S. Magistrate Judge James E. Gates authorized a criminal complaint against Defendant for violations of 18 U.S.C. § 641 (Theft of Government Property) and 26 U.S.C. § 5861(d) (Possession of Unregistered Firearm (Destructive Device)). See United States v. Parker Gibson, No. 5:22-MJ-1651-JG (E.D.N.C.), D.E.

3

1.  On August 1, 2022, U.S. Magistrate Judge Robert T. Numbers, held Defendant's probable cause hearing and found no probable cause. Id., D.E. 16.

On February 21, 2024, a Grand Jury charged Defendant with violations of 18 U.S.C. § 641 (Theft of Government Property), 18 U.S.C. § 844(k) (Theft of Explosive Materials), 18 U.S.C. §842(h) (Possession of Explosive Materials), 26 U.S.C. § 5861(d) (Possession of Unregistered Destructive Device), and 18 U.S.C. §1924 (Unauthorized Removal and Retention of Classified Material).

On March 12, 2024, Defendant was arrested, Magistrate Judge Gates held his Initial Appearance, and Defendant was released on conditions pending trial. D.E. 10.

On August 17, 2024, Defendant filed a motion to suppress any and all evidence seized on the ground that Kelsey Gibson lacked legal authority to consent to the search of a storage unit and garage. D.E. 27.

The United States now responds in opposition.

<u>ARGUMENT</u>

The Fourth Amendment to the Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.  A warrantless search is reasonable if it falls under "one of the narrow and well-delineated exceptions to the warrant requirement." <u>Flippo v. West Virginia</u>, 528 U.S. 11, 13 (1999) (citing <u>Katz v. United States</u>, 389 U.S. 347 (1967)).  "[V]alid consent to seize and search items provides an exception to the usual warrant requirement." <u>United States v. Buckner</u>, 473 F.3d 551, 553-554 (4th Cir. 2007); <u>see also</u> <u>Maryland v. Dyson</u>, 527 U.S. 465, 466, (1999); <u>Schneckloth v.</u>

<u>Bustamonte</u>, 412 U.S. 218, 228 (1973). When two people share authority over a common area, the Supreme Court has looked to widely shared social expectations to determine the reasonableness of the consent. <u>Georgia v. Randolph</u>, 547 U.S. 103, 111 (2006).

## I. KELSY GIBSON HAD AUTHORITY, ACTUAL AND APPARENT, TO CONSENT TO SEARCH THE STORAGE UNIT.

Defendant first argues that the warrantless search was unreasonable because his wife, Kelsey Gibson, lacked common authority to consent to the search of unit 204 or its contents because she was not the primary user of the storage unit. D.E. 27, 4. Defendant is wrong; Kelsey Gibson had actual authority to consent to the search of the storage unit. Additionally, Defendant's argument is moot because actual common authority over the property is not required if law enforcement officers reasonably believe that the consenting individual has authority to consent to a search at the time that the consent is given. <u>See, e.g.</u>, <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 188-89 (1990); <u>United States v. Matlock</u>, 415 U.S. 164, 170 (1974).

As a threshold matter, it's important to point out that Defendant's motion relies heavily on the transcript of the probable cause hearing that occurred on August 1, 2022 – nearly six weeks after the search. However, the analysis the Court should conduct here is based on the information and facts presented to law enforcement agents the day before, and of, the search conducted on June 22, 2024. Consequently, information law enforcement agents learned in the period after the search is irrelevant; what is central here, is what information and facts the agents were aware of at the time the search was conducted.

5

### a. Kelsey Gibson's consent was valid.

Supreme Court and Fourth Circuit precedent is clear that consent to search is valid if it is knowing and voluntary and given by one with authority to consent. Trulock v. Freeh, 275 F.3d 391, 401 (4th Cir. 2001) (citing United States v. Mendenhall, 446 U.S. 544, 557, (1980); Stoner v. California, 376 U.S. 483, (1964)). Defendant does not dispute that Kelsey Gibson provided knowing and voluntary consent; rather, the dispute is whether Kelsey Gibson had the requisite authority to consent.

For a third party to have the authority to consent to a search, she must "possess[ ] common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974). As the Supreme Court has explained, when considering reasonableness of shared authority, "great significance [is] given to widely shared social expectations." Id.; Georgia v. Randolph, 547 U.S. 103, 111 (2006). Thus "it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." Matlock, 415 U.S. at 171, n. 7. That is because

> it is well settled that [third party authority] may be based simply upon the fact that the third person shares with the absent target of the search *a common authority over, general access to, or mutual use of the place or object sought to be inspected* under circumstances that make it reasonable to believe that the third person has the right to permit the inspection in his own right and that the absent target has assumed the risk that the third person may grant this permission to others.

United States v. Block, 590 F.2d 535, 539-40 (4th Cir. 1978) (emphasis added).

6

Here, Defendant surrendered his expectations of privacy with respect to Kelsey Gibson and assumed the risk that she would allow law enforcement to search and seize the items in the storage unit. First, at the time the storage unit was rented, Defendant and Kelsey Gibson were married and not estranged. <u>See</u> Gov. Ex. 6, CID Report 2, GBS 0041-48. In March 2021, Kelsey Gibson rented the storage unit at Defendant's request.[4] <u>Id.</u> At that time, Defendant told Kelsey Gibson he had a dispute with his business partner at Aerial Business Solutions (ABS), and Defendant wanted a place to store items in case his business partner locked Defendant out of ABS's storage unit.[5] <u>Id.</u>

Next, the storage unit was solely listed in Kelsey Gibson's name as tenant. Gov. Ex. 3. At no point did Defendant ask to be on the lease agreement, nor attempt to have the lease agreement transferred into his name. In fact, Kelsey Gibson provided Defendant a key to the unit and the gate access code to the storage facility. Notably, Defendant never expressly informed her she could not access the unit.

Finally, Defendant placed items in the unit Kelsey Gibson, as a Chief Warrant Officer in the Army, was familiar with. He assumed the risk that at any point, even if he locked her out, Kelsey Gibson could obtain access though USA Storage personnel and re-enter the unit. Once she entered and saw the stolen military items, Defendant assumed the risk that Kelsey Gibson would either choose to be faithful to her husband

---

[4] Notably, during the probable cause hearing in Defendant's first case, 5:22-MJ-1651-JG, Defendant disclaimed any interest in the storage unit or its contents.

[5] Dr. Ray Gaskins, Defendant's partner at ABS, was subsequently interviewed by CID agents and was unaware of any dispute with Defendant. Dr. Gaskins then travelled to the ABS storage unit and realized his commercially bought drone was missing. CID agents did recover the civilian drone amongst the stolen military property in the subject storage unit.

7

and not disclose its contents, or to be faithful to her oath as an Army officer and report the theft to the military.

The circumstances here demonstrate that Defendant provided Kelsey Gibson with ready, free access to the personal effects in the storage unit, such that Defendant had a reduced expectation of privacy in those effects. Even if Defendant never explicitly authorized Kelsey Gibson to access them, he nevertheless knowingly assumed the risk that Kelsey Gibson would. Consequently, when Kelsey Gibson voluntarily permitted law enforcement to exercise her own power of access, there was no Fourth Amendment violation, as there was no unauthorized intrusion into a space where Defendant retained a reasonable expectation of privacy.

**b.      Kelsey Gibson had apparent authority to consent.**

Even when a third party who consents to a search does not have common authority over the premises to be searched, consent is still valid for Fourth Amendment purposes if agents were "acting under a reasonable belief that [the third party] had granted valid consent to the search . . . ." <u>United States v. Kinney</u>, 953 F.2d 863, 866 (4th Cir. 1992) (citing <u>Illinois v. Rodriguez</u>, 497 U.S. 177 (1990)). This apparent authority to consent "must be judged against an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" <u>Rodriguez</u> 497 U.S. at 188 (internal citations and quotations omitted). Thus, the key question here is what facts were available to Army CID agents when Kelsey Gibson provided them with consent to search the storage unit.

In cases where law enforcement later learned that the individual did not possess authority to consent, the Fourth Circuit nevertheless held that these searches did not constitute a violation of the Fourth Amendment because the facts available to the officers at the moment would lead a person of reasonable caution to believe that the consenting party had authority. United States v. Buckner, 473 F.3d 551, 555 (4th Cir. 2007); United States v. Kinney, 953 F.2d 863, 867 (4th Cir. 1992). In Kinney, police officers responded to a call from appellant's girlfriend regarding possible stolen guns found in a locked closet. Kinney, 953 F.2d at 864. The girlfriend had taken the keys from appellant while he slept, opened the appellant's locked closet, and found the guns. Id. She then relocked the closet and notified police. Id. When police arrived, the girlfriend admitted them to the apartment, opened the closet with a set of keys, and revealed guns inside of a duffel bag, one of which was found to be stolen. Id. at 865. Officers also opened a white canvas bag and found drug paraphernalia. Id. Later at trial, the girlfriend revealed that she had taken appellant's keys. Id. at 867.

In Buckner, police received complaints of online fraud by someone using computer accounts in the name of appellant's wife. Buckner, 473 F.3d at 552. The wife told police that she knew nothing about the accounts, that she leased a home computer, and only used it occasionally to play solitaire. Id. at 553. Appellant contended that the computer evidence should be suppressed because only he knew the password to view the disputed files. Id. The computer was located in the home's common living room, was on when the police arrived, was leased in the wife's name,

and there was no indication that any files were password-protected. Id. at 555. In both Kinney and Buckner, the Fourth Circuit held that when considering the totality of the circumstances, apparent authority to consent existed, and any evidence seized or searched pursuant to that consent should not be suppressed.

Like Kinney's girlfriend and Buckner's wife, Kelsey Gibson had apparent authority to consent to the search of storage unit 204 because the totality of the circumstances at the time of consent would have led a person of reasonable caution to believe that she had authority to consent. The lease for unit 204 was in Kelsey Gibson's name. Gov. Ex. 3. Prior to the search, Kelsey Gibson reported the contents of the storage unit to CID agents. Gov. Ex. 1, Def. Ex. A at 6. She also shared photos she'd taken during her search with CID agents, who based on their military service, training and experience, identified the items as military property. Gov. Ex. 2. At the time of the search, Kelsey Gibson admitted agents to the USA Storage Center with a gate access code and then used her key to unlock unit 204. Def. Ex. A at 30-31. The CID agents observed family items in the storage unit. Def. Ex. A at 15. The totality of these facts would lead a reasonable person to believe that Kelsey Gibson had the authority to consent to a search of the storage unit. Accordingly, the facts presented here all support the conclusion that Kelsey Gibson possessed the authority, actual or apparent, to consent to a search of the storage unit.

## II.     SCOPE OF THIRD-PARTY CONSENT TO SEARCH.

Defendant next argues that even if Kelsey Gibson had authority to consent to a search of the storage unit, the scope of the consent would not extend to the closed

containers stored within. The law does not support Defendant's position. "The Fourth Amendment protects against unreasonable searches and seizures by Government officials and those private individuals acting as instruments or agents of the Government." United States v. Jarrett, 338 F.3d 339, 344 (4th Cir. 2003) cert. denied, 540 U.S. 1185 (2004) (internal quotations omitted). However, "evidence secured by private searches, even if illegal, need not be excluded from a criminal trial." Id.

### a. Kelsey Gibson conducted a private search.

The Supreme Court has consistently construed Fourth Amendment protection "as proscribing only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." United States v. Jacobsen, 466 U.S. 109, 113 (1984) (internal quotations omitted). The Fourth Circuit considers two factors to determine whether a search was a private search or a governmental search: "(1) whether the Government knew of and acquiesced in the private search; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation." Jarrett, 338 F.3d at 344.

Here, CID agents did not know of, or acquiesce to, Kelsey Gibson's private search. Kelsey Gibson first searched the storage unit on her own initiative, prior to any involvement or communication with law enforcement. Def. Ex. A at 13. Kelsey Gibson's marital relationship with Parker Gibson was deteriorating and she went to search the storage unit because she was looking for answers as to why her marriage

was falling apart. Def. Ex. A at 26. This was an independent and reasonable motivation, based on her circumstances at the time. During this initial private search, Kelsey Gibson reported to CID agents that she opened military wall lockers and pelican cases and found what she knew to be stolen military equipment. Def. Ex. A at 12-13.

It was during this initial private search by Kelsey Gibson that Defendant's expectation of privacy was violated. "Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now nonprivate information." <u>Jacobsen</u>, 466 U.S. at 117. Kelsey told agents what to look for and showed them where to find it. By consenting to the search by law enforcement, Kelsey Gibson was in effect turning over to law enforcement the items she had already found during her initial private search. "And since the Fourth Amendment is not implicated by a private search, it is not violated when the police merely review the same information that was discovered during the private search." <u>United States v. Fall</u>, 955 F.3d 363, 370 (4th Cir. 2020) (citing <u>United States v. Richardson</u>, 607 F.3d 357, 364 (4th Cir. 2010). "Thus, when a third party provides the police with evidence that she obtained in the course of her own search, the police need not 'stop her or avert their eyes.'" <u>Id.</u> (child sexual abuse material found on the defendant's computer by niece, and subsequently shown to law enforcement, did not violate Fourth Amendment.); <u>see also</u>, <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 489 (1971) (no Fourth Amendment violation when police obtained guns and clothing at the defendant's home from the defendant's wife when he was not present).

### b.    CID Agents did not exceed the scope of consent granted.

A consent to search is reasonable as long as it remains within the scope of the consent given. <u>Florida v. Jimeno</u>, 500 U.S. 248 (1991). A person may delimit as they choose the scope of the search for which they consent; however, if the "consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." <u>Id.</u> at 252.

Defendant relies solely on <u>Unites States v. Block</u>, 590 F.2d 535 (4th Cir. 1978), to argue that "even if Kelsey could consent to a search of the unit . . . Kelsey could not provide consent to search their sealed contents." Def. Motion at 5. Defendant's reliance on <u>Block</u> is misplaced. "Block was a mere guest occupant of the room in his mother's home, and the mother had the normal free access that heads of households commonly exercise." <u>Id.</u> at 541. Therefore, Block's mother "clearly had authority to permit inspection of his room." <u>Id.</u> at 541. However, the court found her authority did not extend to the locked footlocker in the room; but not because it was locked, but because she asserted her son's "claim of privacy over it and disclaimed for herself any shared right of access to it." <u>Id.</u> Those facts simply do not exist here. Instead, the facts here do not involve a home and a room within a home, rather a storage unit. Kelsey Gibson did not claim that Defendant had a claim of privacy over the containers within the unit, nor did she disclaim her shared right of access to it. To the contrary, she demonstrated to agents her shared right of access to the unit and the containers within it.

Defendant also makes reference to the containers within the storage unit being "Closed," "Sealed," and "Latched" to suggest Kelsey Gibson's inability to consent to search items within. Yet "Block never established a per se rule that third parties lack authority to consent to the search of any locked object." United States v. Poole, 829 F.2d 37, *3 (4th Cir. 1987) (unpublished). Notably, all but one container within the storage unit was locked, which is simply just one factor in determining whether a person has "a reasonable expectation of privacy in the article searched." Id. Kelsey Gibson never consented to a limited search of the storage unit or any of the containers within it. Based on the photos provided by Kelsey Gibson the day before the consent search was conducted, CID agents could reasonably believe that the containers held the stolen military items, the targets of their search. See United States v. Foster, 654 F. Supp. 2d 389 (E.D.N.C. 2009) (this Court held that the search of a closed safe under the bed in the defendant's minor child's bedroom did not exceed the scope of consent by defendant's fiancé, because the closed safe was large enough to contain the missing items officers were searching for).

c. **The containers were in plain view and the contents were a foregone conclusion.**

"Under certain circumstances, the police may seize the contents of a container found in a lawfully accessed place, without a warrant, if the contents are in plain view." United States v. Williams, 41 F.3d 192, 196 (4th Cir. 1994) (citing Arkansas v. Sanders, 442 U.S. 753, 764 n. 13 (1979). "The rationale for this doctrine rests on the notion that the Fourth Amendment does not protect expectations of privacy that society does not consider reasonable." Id. To justify warrantless seizure under plain

view: "(1) the seizing officer must be lawfully present at the place from which he can plainly view the evidence; (2) the officer has a lawful right of access to the object itself; and (3) it is immediately apparent that the item seized is incriminating on its face." Id. (citations omitted). All three conditions are present here.

First, CID agents were lawfully present in front of unit 204 when Kelsey Gibson opened the storage unit. Second, CID agents had a lawful right of access to the containers within the storage unit because Kelsey Gibson "had previously discovered them and destroyed any privacy interest [Defendant] may have had." Id. (citing Jacobsen, 466 U.S. at 115.). Third, because the stolen military property was contained within military wall lockers, Pelican cases with military markings, and military ammunition canisters, "there is no doubt that their incriminating nature was immediately apparent" to CID agents based on their military service, training, and years of experience. Id. at 197.

As the seizure of the containers within the storage unit was lawful under the plain view doctrine, the search of the containers was also lawful because "the contents of a seized container [we]re a foregone conclusion." Id. (quoting United States v. Corral, 970 F.2d 719, 725 (10th Cir.1992) ("when a container[s] . . . distinctive configuration proclaims its contents, the container supports no reasonable expectation of privacy and the contents can be said to be in plain view."). "In determining whether the contents of a container are a foregone conclusion, the circumstances under which an officer finds the container may add to the apparent nature of its contents." Id. (citing Blair v. United States, 665 F.2d 500, 507 (4th

Cir.1981). Here, the stolen military property was hidden within military wall lockers, Pelican cases with military markings on them, and military ammunition canisters, thus it was a forgone conclusion that military property would be located inside.

## THE GARAGE

Finally, Defendant's motion seeks to additionally suppress evidence from the Gibsons' garage claiming that "Army CID then went to the Gibson home, where Army CID unlawfully searched sealed boxes and containers in the Gibson garage." D.E. 27 at 1. Defendant is mistaken on the facts. Army CID did not conduct a search, via consent or otherwise, on June 22, 2022. Instead, the United States sought and received authorization to search the Gibson home, located at 68 Frenchie Lane in Bunnlevel, North Carolina, on July 26, 2022, and the items located in the garage were properly searched and seized under that warrant. Gov. Ex. 7, Search Warrant of Gibson Home, GBS 0922-931.

## CONCLUSION

Defendant's Fourth Amendment rights were not violated during the search of containers in a storage unit because Kelsey Gibson had the authority to consent to the search. Even assuming, which the government does not concede, Kelsey Gibson did not have actual authority, she had apparent authority to consent to the search and seizure of the items found. Additionally, the search of containers within the storage unit and garage did not exceed the scope of consent because the government's search did not exceed the initial private search conducted by Kelsey Gibson, for which the Fourth Amendment provides no protection. For these reasons, Defendant's

16

Motion to Suppress evidence seized during the search of the storage unit and garage should be denied.

Respectfully submitted this, the 14th day of September, 2024.

MICHAEL F. EASLEY, JR.
United States Attorney

BY: /s/ Gabriel J. Diaz
GABRIEL J. DIAZ
Assistant United States Attorney
150 Fayetteville Street, Suite 1500
Raleigh, North Carolina 27601
Telephone: (919) 856-4326
Fax: (919) 856-4487
gabriel.diaz@usdoj.gov
N.C. Bar No. 49159

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 14th day of September, 2024, served a copy of the foregoing upon counsel for Defendant by electronically filing the foregoing with the Clerk of court using the CM/ECF system.

/s/ Gabriel J. Diaz
 GABRIEL J. DIAZ
Assistant United States Attorney
150 Fayetteville Street, Suite 1500
Raleigh, North Carolina 27601
Telephone: (919) 856-4326
Fax: (919) 856-4487
gabriel.diaz@usdoj.gov
N.C. Bar No. 49159