DETAILS

About 1241, 22 June 22, SA M▓▓ briefed Mr. Gabe Diaz, Attorney, Special Activities Division, US Eastern District, Raleigh, North Carolina. Mr. Diaz indicated his office would assist on this investigation.

About 1350, 22 June 22, SGM Ray D▓▓▓▓▓▓▓▓▓▓▓ UMS SEA, ▓▓▓▓▓▓(ABN) FBNC arrived on scene and verified the drones were the same ones the unit utilized. SGM D▓▓ further stated he was missing 2 Puma models similar to these. SGM D▓▓ looked at the other DJI models and recognized them along with various other drone equipment in the storage unit as being potential unit property.

About 1630, 22 June 22, SA M▓▓ and MSG Dekoda G▓▓▓▓▓▓▓▓▓▓▓ ASP, ▓▓▓▓▓ ▓(ABN) FBNC arrived back at the storage shed. He identified the two incendiary devices and the red smoke grenade. He rendered them safe and transported them back to the ASP in the ammo truck.

About 1817, 22 June 22, Mr. Russell G▓▓▓▓▓▓▓▓▓▓▓ UMS Logistics Manager, ▓▓▓▓▓▓ ▓(ABN), FBNC arrived on scene and observed the items recovered. Mr. G▓▓ related the drones and UAS's were consistent of items used by the Unit. Mr. G▓▓ further stated although some may be commercially purchased, there is a possibility these items are government property. Mr. G▓▓ stated he would have to check the serial numbers with Unit records to confirm.

About 1822, 22 June 22, MSG Shawn B▓▓▓▓▓▓▓▓▓▓▓ SR Logistics NCO, ▓▓▓▓▓▓ (ABN), FBNC arrived on scene and evaluated the property recovered. MSG B▓▓ confirmed the equipment as potentially used or currently in use by the Unit.

About 1915, 22 June 22,▓▓▓▓CID departed the scene. The shed was photographed immediately prior to CW4 Gibson securing the storage shed with her personal lock. All property left in the shed was in proper working order. The evidence was transported back to FBNC to be secured.

About 1043, 23 June 22, SA G▓▓ conducted an interview of CW4 Gibson wherein she stated in March of 2021 she rented the storage unit after Mr. Gibson requested. CW4 Gibson stated Mr. Gibson had his own business, Aerial Business Solutions (ABS) LLC and his partners Mr. Ray and Mrs. Caroline Gaskins (NFI) were asking Mr. Gibson for $10,000 in contribution to taxes. CW4 Gibson stated Mr. Gibson believed he did not owe them and rather than getting locked out of ABS's storage unit, he moved his belongings. CW4 Gibson stated after she got the unit, she placed the locked on it and provided the key to Mr. Gibson. CW4 Gibson stated she did not return to the storage unit until May of 22 and discovered Mr. Gibson had changed the locks. CW4 Gibson stated she retrieved bolt cutters from the storage unit's front office and proceeded to cut the lock and enter the storage unit.

| TYPED AGENT'S NAME AND SEQUENCE NUMBER | ORGANIZATION | |
|---|---|---|
| ///PROTECT IDENTITY// <br> SA Elmer M▓▓▓▓▓ | ▓▓▓▓ CID <br> Fort Bragg, NC 28310 | |
| SIGNATURE | DATE <br> 30 June 22 | EXHIBIT |

| **AGENT'S INVESTIGATION REPORT** | LER NUMBER | **0025-2022-CID343-011874** |
|---|---|---|
| CID Regulation 195-1 | | |

PAGE 2 OF 8

DETAILS

CW4 Gibson stated upon entering the storage unit and found what she believed to be military drones, magazines with 5.56 green tip ammunition, military issued lithium batteries, multiple pelican cases and boxes of unit items containing the unit logo such as Yeti coffee mugs, wine glasses, whisky glasses, glass decanters, flags and coins. CW4 Gibson stated she contacted Mark Aschenbrenner, a former unit member who used to work with Mr. Gibson. CW4 Gibson stated she requested the assistance of contacting this office. CW4 Gibson stated after her conversation with Mr. Aschenbrenner, she went back to the storage unit and conducted a more thorough inventory. CW4 Gibson stated she found additional military drones, more ammunition, which she believed to be in excess of 3,000 rounds. CW4 Gibson stated she also proceeded to search her garage and found what she believed an additional 5,000 rounds and more drones. CW4 Gibson stated she contacted Mr. Aschenbrenner and told him she needed to turn in the items. When asked as to why there was a delay in her reporting she stated it took her time to process what she had found. CW4 Gibson stated she knew what she found was wrong and needed to report it. CW4 Gibson stated she discussed with her therapist and began to develop plans upon notifying law enforcement.

CW4 Gibson stated Mr. Parkers behavior changed during January/February of this year. CW4 Gibson stated it escalated while she was attended WOILE wherein Mr. Gibson stopped communicating with her. CW4 Gibson stated upon her return, Mr. Gibson had pulled back from family gatherings and was very protective of his money. CW4 Gibson stated one day while looking through Mr. Gibson's truck she identified three checks from Cape Fear Farm Credit, in reference to land they own together. CW4 Gibson stated two were patronage checks and one was a refund check wherein they had overpaid their loan. CW4 Gibson noted the checks were dated for March and October of 2020 and March of 2022. CW4 Gibson stated she contacted the bank in which they provided her copies of the checks and observed Mr. Gibson had forged CW4 Gibson's name. CW4 Gibson stated she confronted Mr. Gibson who denied forging her signature and claimed everything was legal due to them being married. CW4 Gibson stated she asked for her share of the money and would call the bank and report fraud to which Mr. Gibson replied it would get very bad for her.

CW4 Gibson stated during the summer of 2013 she was scheduled to go to Airborne School and was preparing to take her Airborne APFT the following day. CW4 Gibson stated she and Mr. Gibson got into an altercation, which turned physical due to her attendance. CW4 Gibson stated Mr. Gibson was upset because he would have to watch their daughter Miss Gibson and Mr. Gibson's biological daughter. CW4 Gibson stated Mr. Gibson pined her up against the wall by grabbing her shoulder and pushing her towards it. CW4 Gibson stated Mr. Gibson proceeded to place his forearm across her chest and neck and lifted her off the floor. CW4 Gibson stated she was let go and proceeded to fall on the ground. CW4 Gibson stated she became extremely sore and was in an immense amount of pain. CW4 Gibson stated the following day, at the APFT, she barely passed pushups and was unable to successfully complete sit-ups due to the pain in her back. CW4 Gibson stated she went to sick call and was provided a muscle relaxer and sent home. CW4 Gibson noted she struggled to breath during this incident and felt defeated and scared.

| TYPED AGENT'S NAME AND SEQUENCE NUMBER | ORGANIZATION | |
|---|---|---|
| ///PROTECT IDENTITY// | ▮▮▮▮ CID | |
| SA Elmer M▮▮▮▮▮ | Fort Bragg, NC 28310 | |
| SIGNATURE | DATE 30 June 22 | EXHIBIT |

DETAILS

CW4 Gibson noted another incident in spring of 2020, she was working remotely and was working in their camper. CW4 Gibson stated she used the camper so she could have privacy. CW4 Gibson stated she was in a Zoom call past 1700 when Mr. Gibson barged in and interrupted the meeting, stating the kids needed dinner. CW4 Gibson stated later that evening Mr. Gibson confronted her, blocking her movement. CW4 Gibson stated she asked Mr. Gibson if he was going to hit her to which he replied I do not have to hit you to hurt you. CW4 Gibson stated Mr. Gibson stalked her around the house until she was able to lock herself in the bathroom and call Laura Bennett (NFI). CW4 Gibson stated she waited until there was silence and time had passed before exiting. CW4 Gibson stated upon exiting she found Mr. Gibson sitting in the living room in a daze. CW4 Gibson stated Mr. Gibson related he had taken his medication and it was unsafe for him to drive. CW4 Gibson stated Mr. Gibson apologized profusely the following morning for his actions.

CW4 Gibson stated she is fearful for her safety as well as her children. CW4 Gibson stated so long as Mr. Gibson thinks he has the upper hand, he will be okay but the moment he finds out there is an investigation he will burst out. CW4 Gibson noted Mr. Gibson had made comments to the extent of being backed in the corner he would fight his way out and "he will not go down without a fight". CW4 Gibson noted Mr. Gibson has multiple weapons throughout their home to include a modified AR-15. CW4 Gibson stated she had packed to-go bags and had established courses of actions in the event Mr. Gibson finds out. (See audio and video recorded statement for details)

SA G███ obtained a written sworn statement from CW4 Gibson wherein she affirmed her aforementioned statement. (See Sworn Statement for details)

About 1545, 23 Jun 22, MSG L███ came to the office and identified the rounds capabilities, use and if the Unit utilized the ammunition recovered. The ammunition MSG L███ reviewed was .300 Black Out. It is used suppressed and is a subsonic ammunition. There was also some supersonic ammunition used in Ar-15's. The .62 grain LOT Number BLH15H213-009 is a Target Fragmentation round to disperse upon contact and will fragment if a human is shot with it. The .77 grain ███ ████████████████ is SOF Unit specific and not available on the open market. He was also in the possession of green tip LOT Number LC-09J387-321 and LC-09J387-323 and tracer rounds. The Black Hills .70 grain ███████ is SOF specific, meant to be used in shorter barrel weapons. There were 500 rounds of small arms ammo, Atlanta Arms .40 cal, H92236-12-P-3162 X533-40 180 Gr LOT 250712, .38 caliber LOT number WCC 90B081-012.

About 0706, 27 Jun 22, SA G███ received a text message from CW4 Gibson who stated she found a box of NBC gear and a crate full of plates in the garage over the weekend. Additionally, CW4 Gibson stated the campsite in which Mr. Gibson keeps their camper opens back up tomorrow and a good chance Mr. Gibson will relocate the camper there.

About 1140, 27 Jun 22, SA G███ re-interviewed CW4 Gibson who provided an additional statement clarifying information pertaining to this case. CW4 Gibson stated she was unaware of how Mr. Gibson

| TYPED AGENT'S NAME AND SEQUENCE NUMBER | ORGANIZATION | |
|---|---|---|
| ///PROTECT IDENTITY// <br> SA Elmer M███ | ███ CID <br> Fort Bragg, NC 28310 | |
| SIGNATURE | DATE <br> 30 June 22 | EXHIBIT |

DETAILS

brought the items to their residence or their storage unit. CW4 Gibson stated she never observed Mr. Gibson bring any of the ammunition or military looking drones into their storage unit or residence. CW4 Gibson noted Mr. Parker never told her about the equipment he was bringing back from work. However, she noted the wall lockers found in the storage unit, CW4 Gibson was specifically told by Mr. Gibson that the unit was getting rid of them and he could take them. CW4 Gibson reiterated Mr. Gibson thought he could get away with stealing items and believed the Unit "owed him". CW4 Gibson stated she has never seen Mr. Gibson sell or use any of the equipment found thus far. CW4 Gibson stated she was unaware of any foreign contacts Mr. Gibson may have to include no knowledge of being involved with any extremist groups. CW4 Gibson noted Mr. Gibson drives a 2008, white, Ford 250 and currently has an Apple iPhone 11 Pro, listed number is 615-613-1970. CW4 Gibson stated she identified additional equipment of what she believed to be chemical, biological, radiological and nuclear (CBRN) equipment as well as a crate of ballistic plates. CW4 Gibson stated she has never seen Mr. Gibson receive any of the items found in the storage unit or at home via USPS or any other mail service. CW4 Gibson further stated she recalled a fraudulent insurance claim Mr. Gibson claimed in 2015 or 2016 wherein he claimed items were stolen from their storage shed. CW4 Gibson stated she believed the shed was not broken into but rather they believed the people they hired to cut their grass had taken their pressure washer and other similar equipment which was not locked. CW4 Gibson stated Mr. Gibson added a stolen bicycle which was still in his possession. CW4 Gibson stated in March of 2022 she found Mr. Gibson's Social Security application which she stated was completely fabricated minus the medication Mr. Gibson was prescribed. CW4 Gibson further stated while working S-UMAS with the Unit, Mr. Gibson had several cages to include an outbuilding for all of "his" drones and equipment. CW4 Gibson stated Mr. Gibson would spend a majority of his time there as well as on the weekends. CW4 Gibson stated Mr. Gibson informed her he was organizing, conducting inventories and building or fixing equipment.

About 1203-1215, 27 Jun 22, SA G█████ obtained three hand drawn sketches from CW4 Gibson pertaining to her residence and her camper. (See Hand Drawn Sketches for details)

About 1414, 27 Jun 22, SA G█████ obtained a written sworn statement from CW4 Gibson reaffirming her statement. (See Sworn Statement for details)

About 1500, 27 Jun 22, SA M█████ obtained a written statement from MSG L█████ who described the (2) incendiary grenades collected on the scene and that they were live, they were rendered safe on the scene, transported back to the ASP for safe storage. He also confirmed the LOT #, who it was assigned to and the value will have to be gathered from the Program Manager. He also described the capabilities of the devices. (See Sworn Statement for details)

About 1550, 27 Jun 22, SA M█████ obtained a written sworn statement from SGM F█████ who stated he reviewed the two maps in question and verified the maps were classified bacterial. SGM F█████ stated both maps were properly classified to the SECRET//REL to USA, FVEY portion marking. SGM F█████ stated individuals would not be allowed to have possession of these maps with their personal

| TYPED AGENT'S NAME AND SEQUENCE NUMBER | ORGANIZATION | |
|---|---|---|
| ///PROTECT IDENTITY// | ████████CID | |
| SA Elmer M████████ | Fort Bragg, NC 28310 | |
| SIGNATURE | DATE | EXHIBIT |
| | 30 June 22 | |

DETAILS

property to include in a storage shed. SGM F█ noted there is not an individual assigned to the unit, past or present that is authorized to take the maps home. SGM F█ stated if Mr. Gibson wanted to take the maps home, they would have gone to the Special Security Representative (SSR) and have the maps redacted with the classified markings removed which the maps in question had not gone through the correct process. SGM F█ stated the maps reflect detailed geographic locations of coalition supply routes █████████ (See Sworn Statement for details)

About 2213, 27 Jun 22, SA G█ received images via text from CW4 Gibson of Mr. Gibson's white Ford 250, their camper, and front of their residence. The license plate to Mr. Gibson's pickup truck was a weighted NC plate "EJ9038". CW4 Gibson also provided a copy of Miss Gibson's gymnastics schedule and noted she is in the "Lilac" group. CW4 Gibson stated Mr. Gibson will pick Miss Gibson up from gymnastics Tuesday and take her Wednesday and Thursday. CW4 Gibson stated on Friday's, she is likely to do both. CW4 Gibson further stated she uploaded pictures to the Google drive of the checks that Mr. Gibson forged with her signature and deposited into his account. CW4 Gibson further stated she has two dogs that are friendly and wanted this office to know prior to conducting the search of her residence.

About 1048, 28 Jun 22, MSG L█ provided the value of the grenades found at the storage unit. MSG L█ stated the value of the red smoke grenade was $84.07 and the two incendiary grenades were each valued at $24.08 for a total value of $132.23.

About 1430, 28 Jun 22, SA G█ obtained a written sworn statement from Mr. G█ wherein he detailed the events on 22 Jun 22 in which he was asked by Mr. Ray D█ to visit the storage unit belong to CW4 Gibson to identify equipment. Mr. G█ stated he assisted in the identification of several commercial, off the shelf drones and Army specific Puma drone and components. (See Sworn Statement for details)

About 1616, 28 Jun 22, SA G█ and SA M█ met CW4 Gibson at her storage unit wherein she provided verbal consent for this office to enter and obtain possession of the two (2) military wall lockers. CW4 Gibson confirmed Mr. Gibson had brought them home and informed her he was allowed to have them and the unit was getting rid of them. CW4 Gibson closed the storage unit at 1626. The wall lockers were subsequently transported to Unit and stored at a secured location at the ASP. This office coordinated with MSG L█ who provided a secured area for this office to store the wall lockers. The wall lockers were subsequently documented on EPCD, DN: 006-22. (See EPCD for details)

About 1100 29 Jun 22, SA G█ accessed the Google drive provided by CW4 Gibson in order to review the newest photographs she uploaded. A review determined the following:

-A letter from Dr. Sara Olack, Staff Psychiatrist, Department of Veterans Affairs, who wrote a letter endorsing Mr. Gibson's medical treatment for PTSD and ADHD.

| TYPED AGENT'S NAME AND SEQUENCE NUMBER | ORGANIZATION | |
|---|---|---|
| ///PROTECT IDENTITY// | █ CID | |
| SA Elmer M█ | Fort Bragg, NC 28310 | |
| SIGNATURE | DATE | EXHIBIT |
| | 30 June 22 | |

| AGENT'S INVESTIGATION REPORT | LER NUMBER **0025-2022-CID343-011874** |
|---|---|
| *CID Regulation 195-1* | |

**DETAILS**

-Page 10 of the SSA application depicts Mr. Gibson reported having difficulties fastening belts, donning tight socks, tying shoe laces or tucking in shirts. Mr. Gibson stated CW4 Gibson reminds him of what medication to take. Mr. Gibson claimed he has difficulty squeezing his hands.

-Page 9 of the SSA application revealed Mr. Gibson claimed he was prescribed a brace/splint, hearing aids and glasses to which he uses every day.

-Page 8 of the SSA application details the illnesses, injuries and conditions Mr. Gibson stated he has such as stair climbing, walking, sitting, kneeling, using his hands and reaching. Mr. Gibson claimed he can only walk between 1-4 minutes before having to rest.
-Page 7 of the SSA application details Mr. Gibson claims to have no hobbies and therapy has encouraged him to begin gardening, taking photos and learn to play an instrument but has no interest in the aforementioned. Mr. Gibson stated he no longer participates in hobbies or pleasure activities.

-Page 6 of the SSA application details Mr. Gibson has the ability to drive a car, pay bills, count change, handle his banking accounts and can shop for himself.

-Page 5 of the SSA application details Mr. Gibson claimed CW4 Gibson must remind him to take a bath after a few days. Mr. Gibson further claimed he cannot consistently complete house or yard work. Mr. Gibson claimed pain and lack of motivation has prevented him from cleaning and yard work.

-Page 4 of the SSA application details Mr. Gibson outlined his daily activities consisting of taking care of Miss Gibson. Mr. Gibson stated he does not take care of pets (CW4 Gibson stated they possess two dogs). Mr. Gibson claimed he currently can only sleep 3-5 hours a night and his pain and anxiety keep him awake at night. Mr. Gibson claimed his range of motion prevents him from buttoning shirts and reaching his whole body.

-Page 3 of the SSA application details Mr. Gibson as the applicant with his listed SSN of ███████ and a daytime phone number of 615-613-1970. Mr. Gibson stated his anxiety and depression make it difficult for him to leave his house. Mr. Gibson further claimed neck, back and hip pain make mobility near impossible. Mr. Gibson claimed intense migraines result in him stopping in what he is doing.

- A photograph of the coversheet depicts Mr. Gibson's contact information and application being submitted to the Disability Determination Service, Case ID: 4113690.

- A photograph of three checks identified as Patronage Refunds from Cape Fear Farm Credit ACA, 400 W Broad St., PO BOX 368, Dunn, NC 28335, were paid to the order of CW4 Gibson and Mr. Gibson in the following amounts and date

* 14 Mar 22 for the amount of $3,431.80

| TYPED AGENT'S NAME AND SEQUENCE NUMBER | ORGANIZATION | |
|---|---|---|
| ///PROTECT IDENTITY// <br> SA Elmer M███████ | ████ CID <br> Fort Bragg, NC 28310 | |
| SIGNATURE | DATE <br> 30 June 22 | EXHIBIT |

DETAILS

* 02 Mar 22 for the amount of $2,505.01
* 21 Oct 20 for the amount of $3,260.00

The following photograph depicts the backs of the check which contains the signatures of Mr. Gibson and CW4 Gibson. As stated in CW4 Gibson's statement, her signature was fraudulently placed on the back and deposited into Mr. Gibson's account.

-A photograph depicting Mr. Gibson's Glock .45 with trigger guard affixed to the gun.

-A photograph depicting a Sentry brand gun safe.
-A photograph depicting Mr. Gibson's NC concealed handgun permit.

-A photograph of Mr. Gibson's Bank of America debit card associated with Aerial Business Solutions. Card # 5438 5700 0159 9200.

-A photograph of Mr. Gibson's Citi Master Card. Card # 5424 1813 2543 0150.

-A photograph of Mr. Gibson's American Express Platinum Card. Card # 3739 088512 82007.

-A photograph of Mr. Gibson's USAA Debit Card. Card # 4535 0603 4836 2252.

-A photograph of Mr. Gibson's USAA Visa signature card. Card # 4270 8290 3070 4917.

-A photograph of Mr. Gibson's retired identification and privilege card.

-A photograph of USAA checks of Mr. Gibson.

-A photograph of a Kel Tech Brand .380 pistol.

-A photograph of the Gibson Camper's license plate which is a NC Trailer license plate # CL-66359.

About 1859, 29 Jun 22, SA G█████ spoke with CW4 Gibson and related he has not received any information regarding the search warrant. CW4 Gibson stated she understood and thanked this office for working as quickly as they are but was still very much concerned for her safety. Following the call, SA G█████ received a text from CW4 Gibson which stated "If it's next week he's going to know I changed the storage unit payment. And he's going to go check, and he's going to know the code is changed and he can't get in. The payment comes out on the 1st. My daughter is at the gym from 9-230 on Friday. I'm doing drop off and pick up". Additionally, SA G█████ requested clarification regarding the storage unit and how CW4 Gibson obtained the unit, as there was mention Mr. Gibson had switched the unit into his name. CW4 Gibson replied via text which stated "I got it in March 2021, and I paid for it monthly up until May 2022. When you asked for the contract, I realized I didn't see a

| TYPED AGENT'S NAME AND SEQUENCE NUMBER | ORGANIZATION | |
|---|---|---|
| ///PROTECT IDENTITY// | ████ CID | |
| SA Elmer M█████ | Fort Bragg, NC 28310 | |
| SIGNATURE | DATE 30 June 22 | EXHIBIT |

| AGENT'S INVESTIGATION REPORT | LER NUMBER **0025-2022-CID343-011874** |
|---|---|
| CID Regulation 195-1 | |

**DETAILS**

June payment, so when I asked the front desk for a copy of the contract I asked about the June payment. The front desk said it was paid, and that Parkers card was charged. That's when I changed the payment back to me and took him off the unit completely, and the front desk changed the gate code. I've been the primary on the contract the whole time, he was authorized access until last week. I'm sorry if that wasn't clear earlier. I didn't think about the July payment as an issue until just now, I thought we'd be done with this party by now."///LAST ENTRY///

| TYPED AGENT'S NAME AND SEQUENCE NUMBER | ORGANIZATION | |
|---|---|---|
| ///PROTECT IDENTITY// | ██████ CID | |
| SA Elmer M██████████ | Fort Bragg, NC 28310 | |
| SIGNATURE | DATE | EXHIBIT |
| | 30 June 22 | |